IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ROBBINS, GELLER, RUDMAN & DOWD, LLP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 3:14-CV-2197 JUDGE CAMPBELL |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Summary Judgment on Freedom of Information Act (FOIA) Exemption 7(A). For the reasons set forth herein, the Court will GRANT Defendant's motion.

**I.    Factual Background and Procedural History**

On April 12, 2012, the *New York Times* published an article reporting that Walmart had given millions of dollars in bribes to Mexican officials to facilitate Walmart's growth in Mexico. Docket No. 38-3. The *Times* article identified participants in the bribery scheme as well as the alleged subsequent cover-up by Walmart. The *Times* quoted, referenced, and reproduced a number of internal Walmart documents. In response to this article, Walmart stated that it had "met voluntarily with the United States Department of Justice (DOJ) and the Securities and Exchange Commission (SEC) to self-disclose the ongoing investigation in this matter." Docket No. 38-4. On June 1, 2012, Walmart acknowledged that it was the subject of investigations by the DOJ and the SEC for potential violations of the Foreign Corrupt Practices Act and that it was cooperating with the investigations. Docket No. 38-6.

On December 17, 2012, the *Times* published a second article on Walmart's alleged Mexican bribery scheme. Docket No. 38-6. For that article, the *Times* journalists gathered tens of thousands of documents related to Walmart's bribes to obtain building permits in Mexico and traced specific bribes to permit records, revealing bribes paid to Mexican officials: to construct one store without the required construction license, environmental permit, urban impact assessment, or traffic permit; to construct a distribution center in an "environmentally fragile" area; and to construct yet another store near ancient pyramids, which required altering a zoning map to allow commercial development in that location. *Id.*

On January 10, 2013, a Congressional committee publicly released several internal Walmart documents it had acquired through its own investigation, including some that had been quoted from and excerpted by the *Times* but not released in full. Docket No. 38-7. Walmart responded that it had provided "extensive documentation" to the DOJ and SEC, including the documents the committee released. Docket No. 1-2.

On April 3, 2013, the Plaintiff made a request to the SEC pursuant to FOIA, 5 U.S.C. § 552, seeking the following records between the dates of June 1, 2011 and April 15, 2013:

> All documents (in any form (electronic, paper, etc.)) provided by Wal-Mart Stores, Inc. ('Walmart') to the Commission that relate to either (i) possible violations of the Foreign Corrupt Practices Act ('FCPA') or (ii) Walmart's public disclosures concerning possible FCPA violations.

Docket No. 1-3. The SEC denied the request, stating that the documents were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"), 17 C.F.R. § 200.80(b)(7)(I). An Associate General Counsel for the SEC denied Plaintiff's appeal on June 12, 2013. On November 13, 2014, the Plaintiff filed the Complaint in this Court.

The SEC moved for summary judgment on the basis of FOIA Exemption 7(A). In support

2

of the motion, the SEC provided declarations from Jonathan P. Scott from the SEC and Tarek J. Helou from the DOJ, who are responsible for the Walmart investigations in their respective agencies. The Plaintiff responded by filing a motion for limited discovery under Federal Rule of Civil Procedure 56(d) seeking evidence to show that Exemption 7(A) does not apply to all of the withheld documents, that the SEC's declarations were facially inadequate, and that the SEC's track record of systematic FOIA violations evidenced bad faith. The Magistrate Judge denied discovery, but found that the SEC had not adequately detailed its segregability process and that the Helou Declaration was not based on "personal knowledge" of the Walmart documents. Docket No. 44. The Magistrate Judge ordered the SEC to file supplemental declarations addressing the deficiencies. *Id.* The SEC responded by supplementing the Scott Declaration as to the segregability analysis but did not submit a supplemental declaration for Mr. Helou.

Plaintiff moved for reconsideration of the Magistrate Judge's denial of its discovery motion based on the SEC's failure to file a supplemental declaration from Mr. Helou as ordered. The SEC responded that the Helou Declaration was not offered as an independent basis for withholding the requested materials, but instead merely was offered to show that the DOJ also has an interest in withholding the requested materials. The Magistrate Judge denied the motion for reconsideration, holding that, notwithstanding the SEC's failure to supplement the Helou Declaration as ordered, in light of the SEC's clarification of the limited purpose for which the SEC had submitted the Helou Declaration, no additional facts were needed for the Plaintiff to file its opposition to the pending motion for summary judgment. Docket No. 53. The Magistrate Judge further held that the Plaintiff could challenge the SEC's segregability process and the weight to be given to the Helou Declaration in responding to the SEC's summary judgment motion. *Id.*

## II. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'" *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party is able to meet this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Van Gorder v. Grand Trunk W.R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to defeat summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (quoting *Anderson*, 477 U.S. at 252). "As to materiality, the substantive law will identify which facts are

material. Only disputes over fact that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III. Legal Analysis

Under the FOIA, each "agency" upon "any request" for records shall make the records "promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless one of nine specific exemptions applies, 5 U.S.C. § 552(b)(1)–(9). Because the FOIA's "dominant objective" is disclosure, courts are to narrowly construe these exceptions. *Akron Std. Div. of Eagle–Picher Indus., Inc. v. Donovan*, 780 F.2d 568, 571 (6th Cir. 1986). The district court reviews an agency's decision to deny a FOIA request *de novo*, with the burden on the agency to justify its withholding. 5 U.S.C. § 552(a)(4)(B). On summary judgment, the government must support its position that the documents it withheld are covered by one of the statutory exemptions with detailed affidavits, which are entitled to a "presumption of good faith." *Rugiero v. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001).

Exemption 7(A) allows an agency to withhold information if the information is "compiled for law enforcement purposes," and if its release "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *Am. Civil Liberties Union (ACLU) of Michigan v. F.B.I.*, 734 F.3d 460, 465 (6th Cir. 2013). "Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)) (alterations in original).

5

### A. The Responsive Records Were Compiled for Law Enforcement Purposes

The first prong of this test is satisfied in this case, as the 127,000 documents the SEC has identified as responsive to the Plaintiff's FOIA request were "compiled for law enforcement purposes." The Sixth Circuit "has adopted a *per se* rule under which any documents compiled by a law enforcement agency fall within the first part of the section 552(b)(7) exception." *Rugiero*, 257 F.3d at 550 (citing *Jones v. F.B.I.*, 41 F.3d 238, 245 (6th Cir. 1994)). "This rule applies not only to criminal enforcement actions, but to records compiled for civil enforcement purposes as well." *Id.* (citations omitted). The records the Plaintiff seeks were compiled by the SEC, which is a law enforcement agency. *See* 15 U.S.C. § 78u(a)(1); Docket No. 30-1 ¶ 2 (Scott Decl.).

### B. Disclosure of the Responsive Records Could Reasonably be Expected to Interfere with Enforcement Proceedings

The second prong of Exemption 7(A) has two requirements. First, the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information "could reasonably be expected to interfere" with the enforcement proceeding. 5 U.S.C. § 552(b)(7)(A). "[T]he agency may show this risk of interference generically—document-by-document discussion is unnecessary." *ACLU of Michigan*, 734 F.3d at 466 (citing *Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1431 (6th Cir. 1993)). If an agency wishes to adopt this "categorical approach," it has a three-fold task: (1) define its categories functionally; (2) "conduct a document-by-document review in order to assign documents to the proper category"; and (3) "explain to the court how the release of each category would interfere with enforcement proceedings." *CREW*, 746 F.3d at 1098 (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986)).

#### 1. The Government Has Shown That a Law Enforcement

**Proceeding is Pending or Prospective**

The Plaintiff argues that the SEC has not established the prospect of enforcement proceedings. The declaration of Mr. Scott, Assistant Regional Director in the SEC's Enforcement Division who supervises the Walmart investigation, asserts that the Walmart investigation "remains open," and that the SEC staff "is actively receiving and reviewing documents, interviewing witnesses, determining which additional witnesses to contact, and evaluating evidence regarding potential violations of the FCPA or other provisions of the federal securities laws." Scott Decl. ¶ 5. The SEC must only establish that "there is at least a reasonable chance than an enforcement proceeding will occur." *Dickerson*, 992 F.2d at 1430 (quotation and citation omitted).[1] The Scott Declaration, which is entitled to a presumption of good faith, clearly demonstrates that a law enforcement action is pending or prospective.

### 2. The SEC Has Defined Its Categories Functionally

"[I]f the government chooses to rely on categorical determinations, its definitions of relevant categories must be sufficiently distinct to allow a court to determine, as to each category, whether the specific claimed exemption(s) are properly applied." *Vaughn v. United States*, 936 F.2d 862, 868

---

[1] The SEC states that there is an ongoing criminal investigation being conducted by the DOJ, which would also be jeopardized by disclosure of the records responsive to the Plaintiff's FOIA request. Docket No. 30 at 20 (citing Helou Decl. ¶¶ 2–6)). However, the Magistrate Judge found that Mr. Helou's declaration failed to demonstrate that the DOJ's Criminal Investigation is in furtherance of a pending or prospective law enforcement proceeding. The Helou Declaration only states that the documents could be used "[i]f the Criminal Investigation results in any law enforcement action." Docket No. 44 (citing Docket No. 30-1 ¶ 4 (Helou Decl.)). Because it did not file a supplemental declaration addressing this insufficiency, the Court concludes that the SEC has abandoned the position that the release of these documents could reasonably be expected to interfere with the DOJ's enforcement proceedings. Nonetheless, the SEC has established that its own law enforcement proceeding is pending or prospective and that the release of the responsive information could reasonably be expected to interfere with that enforcement proceeding, which is all that is required.

(6th Cir. 1991). "The hallmark of an acceptable ... category is thus that it is functional; it allows the court to trace a rational link between the nature of the document and the alleged likely interference." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (citation omitted). The government must walk "a tightrope" in Exemption 7(A) cases: "categories must be distinct enough to allow meaningful judicial review, yet not so distinct as prematurely to let the cat out of the investigative bag." *Curran v. Dep't of Justice*, 813 F.2d 473, 475 (1st Cir. 1987).

> The SEC created three categories for documents responsive to the Plaintiff's FOIA request:
>
> 1. <u>documents Walmart produced in response to SEC documents requests and subpoenas</u>, including emails, contracts, financial records, internal presentations, meeting minutes, and memoranda, among other types of documents;
>
> 2. <u>privilege logs</u> that detail, among other things, the authors, recipients, dates, and subject matters of certain communications that have been withheld from production or redacted pursuant to a claim of privilege; and
>
> 3. <u>correspondence from Walmart to the SEC</u>, including emails from Walmart's counsel to SEC staff regarding document productions, meetings, telephone conferences, the subjects and timing of witness interviews, and other related matters.

Scott Decl. ¶¶ 12, 13, 16, 19.

The Plaintiff argues that the first category is a "catch-all" category that is not functional because the documents within it will "vary drastically in type and substance, as will the corresponding harms, if any, that can be claimed for withholding them." Docket No. 54 at 24–25. The SEC responds that, although there are different types of documents in the first category, the type of harm caused by their release would be the same, as each of these documents would provide "information about the nature, scope, direction, focus, and strategy of the commission's ongoing investigation."[2]

---

[2]Although the Plaintiff focuses primarily on the first category of documents, the Court notes that the SEC argues that releasing the responsive documents in its second and third category would

The Court concludes that the SEC has appropriately walked the Exemption 7(A) tightrope in this case. The Court is able to trace a rational link between the nature of the documents produced by Walmart in response to the SEC's investigation and the interference the SEC alleges could reasonably be expected if it is required to disclose those documents. The Court agrees that, if the SEC were required to release to the Plaintiff the documents it has obtained from Walmart through its investigation, those documents likely would reveal the nature, scope, direction, and strategy of the agency's investigation. Simply put, the responsive documents reveal what the SEC finds to be important and relevant to its investigation.

The fact that the first category encompasses a variety of types of documents produced by Walmart does not render it a non-functional category. Although there are different types of documents contained in the category, they are all documents that were in Walmart's possession that the SEC believed were important to its investigation. *See, e.g., Dillon v. Dep't of Justice*, 102 F. Supp. 3d 272, 291–92 (D.D.C. 2015) (approving a 7(A) category of "evidentiary/investigative materials"); *Gavin v. U.S. S.E.C.*, No. 04-4522 (PAM/JSM), 2005 WL 2739293, at *3 (D. Minn. Oct. 24, 2005) (holding that the SEC's 7(A) category of "documents produced by third parties" was functional notwithstanding the plaintiff's argument that it "merely classif[ied] how the documents were obtained"); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036, 1039 (7th Cir. 1998) (approving in a 7(A) case a category of "documents submitted by various individuals or entities pursuant to grand jury subpoenas served upon them"); *Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1433–34 (6th Cir. 1993) (approving in a 7(A) case categories of "[d]ocuments containing

---

also reveal the scope, strategy, and progress of the SEC's investigation as well as the identities of potential witnesses and defendants and the topics of the SEC's conversations with them. Docket No. 30 at 28 (citing Scott Decl.).

information received from confidential informants," "information and documents provided by local law enforcement," and "interviews of third parties and cooperating witnesses"). The Court finds that the SEC defined functional categories in this matter.

### 3. The SEC Has Conducted a Document-by-Document Review In Order to Assign Documents to the Proper Category

The SEC has satisfied the second requirement for making a categorical showing that releasing the requested documents could reasonably be expected to interfere with enforcement proceedings under Exemption 7(A), as it conducted a document-by-document review in order to assign documents to the proper category. Docket No. 44 at 14–15 (Magistrate Order). Mr. Scott declared that he supervised such a review. Scott Decl. ¶ 10. Supervisors may make declarations based on the work done by their subordinates, and agency declarations are entitled to a presumption of good faith. *Rugiero*, 257 F.3d at 544.

### 4. The SEC Has Explained to the Court How the Release of Each Category Would Interfere With Enforcement Proceedings

The SEC has also satisfied the third "categorical approach" requirement. As the Sixth Circuit has explained,

> Unlike Exemptions 7(B), (C), and (D), which deal with protecting the identity of specific investigation targets and confidential sources, by its plain terms Exemption 7(A) does not limit what type of "interference" may justify withholding. The FBI's declaration—that release of this information may reveal what leads the FBI is pursuing and the scope of those investigations, permitting groups to change their behavior and avoid scrutiny—amply states a type of interference covered by Exemption 7(A).

*Am. Civil Liberties Union of Michigan v. F.B.I.*, 734 F.3d 460, 466 (6th Cir. 2013).

The type of interference the SEC claims in this case is the same as that claimed by the FBI in *ACLU of Michigan*. The Scott Declaration states that, other than Walmart itself, no other actual

10

or potential witness in the investigation or potential defendant in any future proceeding has access to all of the records in the three categories, and that even within Walmart, most current employees lack that access and information. The Scott Declaration indicates that release of these documents "could reveal which entities and individuals are potential witnesses in the Walmart Investigation or potential defendants in future enforcement proceedings and what information those entities and individuals might have." Scott Decl. at ¶ 14. All the internal Walmart documents reveal "the topics, time periods, places, individuals, and entities that are the subjects of the commission's interest." Scott. Decl. at ¶ 14. The SEC states that it is afraid that potential witnesses and defendants could shape their testimony, the testimony of others, or alter, tamper with, or withhold evidence based on what the documents show regarding what other witnesses or defendants know and regarding what the Commission staff knows. Scott Decl. at ¶ 15.

"[T]he release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978); *accord Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) ("In the typical case . . . the requested records relate to a specific individual or entity that is the subject of the ongoing investigation, making the likelihood of interference readily apparent."). Indeed, "the Supreme Court has said . . . [that] the most obvious risk of interference with enforcement proceedings is that witnesses will be coerced or intimidated into changing their testimony or not testifying at all." *Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1433 (6th Cir. 1993) (citing *Robbins Tire*, 437 U.S. at 239). In addition, courts are to "give deference to an agency's predictive judgment of the harm that will result from disclosure of information."

11

*CREW*, 746 F.3d at 1098. Requiring the SEC to reveal more details about the information Walmart has provided to it could reasonably be expected to interfere with its enforcement proceedings.

The Plaintiff has several theories in support of its argument that the SEC has failed to demonstrate that the release of the responsive documents would interfere with its enforcement proceedings. First, it argues that, because the documents in question were supplied to the SEC by Walmart itself, their disclosure cannot reasonably be expected to interfere with enforcement activities. But the cases the Plaintiff cites stand for the proposition that when a *particular* potential defendant or witness in an investigation already has the documents, the agency cannot argue that the revealing the information would allow *that particular* entity or individual premature access to the evidence upon which the agency intends to rely at trial. *See*, *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1085 (9th Cir. 2004); *Swan v. S.E.C.*, 96 F.3d 498, 500 (D.C. Cir. 1996) ("If the target of the investigation—the one who might use the information to intimidate witnesses, destroy evidence, and so forth—already has the information, public access to it is unlikely to interfere with law enforcement proceedings."). These cases are inapposite. Although Walmart may have knowledge of all of the documents that it has produced to the SEC, the SEC has represented that it is investigating entities and individuals other than the Walmart corporation in conjunction with the Mexican-bribery allegations, including current and former Walmart employees as well as individuals and entities that are completely unaffiliated with Walmart. The SEC further represents that no entities or individuals other than the Walmart corporation are aware of all of the documents that Walmart has produced to the SEC. Furthermore, the SEC itself has not officially acknowledged *any* portion of the records that are in its investigative file.[3] Although Walmart chose to make public

---

[3]This fact distinguishes this case from *Detroit Free Press v. U.S. Dep't of Justice*, 174 F. Supp. 2d 597 (E.D. Mich. 2001), on which the Plaintiff relies, because in that case, the FBI

12

statements about documents it claims it produced to the SEC, based on its own interests, that choice does not obligate the government agency charged with conducting investigations and bringing charges based on violations of federal law to *itself* divulge what documents it has obtained from a subject of its investigation.

Next, the Plaintiff argues that disclosure of the responsive records cannot reasonably be expected to interfere with enforcement activities because many of them are in the possession of, and have been publicly quoted and released by *The New York Times* and members of Congress. A recent Sixth Circuit case is instructive on this issue. In the *American Civil Liberties Union of Michigan v. F.B.I.*, 734 F.3d 460 (6th Cir. 2013), the ACLU requested under FOIA that the FBI release information about the agency's use of community-level racial and ethnic demographic data in order to understand how the agency was using that data in law enforcement efforts. The Sixth Circuit rejected the ACLU's argument that the release of publicly available information would not interfere with investigations:

> Our intelligence and law-enforcement agencies are awash in a sea of data, much of it public, so a choice to focus on a particular slice of that data directly reveals a targeting priority, and indirectly reveals the methodologies and data used to make that selection. There is no way to release certain types of public information without showing the FBI selection process. For example, release of phone numbers in an FBI document, while individually publicly available in a phonebook, might reveal investigation targets or criminal networks.

*ACLU of Michigan*, 734 F.3d at 466. So too, in this case, although some of the documents released by the *New York Times* or by Congress may be contained in the SEC's investigatory file, the SEC's release of those documents in response to a FOIA request will unavoidably reveal the SEC's "selection process."

---

personnel themselves had disclosed information responsive to a FOIA request to the media. *Id.* at 600–01.

As with Walmart's choice to reveal publicly some of the documents it allegedly has provided to the SEC, the choice of the *New York Times* and Congress to reveal some of those documents in no way obligates the SEC to compromise its investigation by releasing documents that, until that point, entities and individuals subject to its investigation could only speculate were in the SEC's investigatory file. The motivations and interests of a private company subject to an investigation by a government agency, journalists, and Congress, are far different than those of the government agency tasked with investigating and bringing legal actions against those who have violated the law. None of the disclosures by these other entities rob the SEC of the sanctuary afforded by Exemption 7(A) to avoid interference with its investigation.

**C. The SEC's Segregability Review Was Legally Sufficient**

The Plaintiff argues that the SEC did not conduct a segregability analysis. FOIA requires that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). As the Supreme Court held, "although the segregability provision requires that nonexempt portions of documents be released, it does not speak to the prior question of what material is exempt." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).

The first Scott Declaration stated, "there is no information that can be segregated and disclosed." Scott Decl. at ¶ 11. The Magistrate Judge held that this statement did not provide the court with enough information to determine whether "the actual segregability task performed by the Defendant was deficient" and ordered the agency to file a supplemental declaration "explaining the segregability analysis conducted pursuant to this FOIA Request." Docket No. 44 at 15. The supplemental declaration from Mr. Scott filed by the SEC states as follows:

14

> As explained in my April 28, 2015 declaration, I supervised a document-by-document review of the documents at issue in this case and verified that all of the requested records come within three categories. April 28, 2015 Scott Decl. ¶¶ 6–10. The three categories of records were all compiled by the Commission in connection with its Walmart Investigation. I concluded, and continue to believe, that public disclosure of the records responsive to plaintiff's FOIA request could reveal the subject and focus of the Commission's Investigation, including details about potential witnesses and defendants and the information they might have. Thus, disclosure of the responsive records in the three categories could reasonably be expected to interfere with the ongoing Walmart Investigation and any future enforcement proceedings. *See id.* ¶¶ 12–22. Based on these conclusions, the Commission has determined that all responsive records, in their entirety, are exempt pursuant to FOIA Exemption 7(A) and that there are no non-exempt portions to segregate and release.

Docket No. 45-11 at ¶ 3.

The Supplemental Scott Declaration could be interpreted to mean that the SEC considered whether any records or portions thereof were segregable at the same time as it conducted a document-by-document review to determine the categories and to place each document in a category. However, it is clear from the SEC's reply brief that it has concluded that the records do not contain any reasonably segregable information by virtue of the way the Plaintiff's phrased its FOIA request. That is, the SEC's position is that, because the Plaintiff's request sought "all documents. . . provided by [Walmart] to the Commission that relate to . . . possible violations of the Foreign Corrupt Practices Act," all such documents disclose, by definition, the information SEC sought and obtained from Walmart in the course of its investigation. All of the documents in the SEC's first category were provided by Walmart in response to the SEC's requests and subpoenas. As a result, according to the SEC, all documents in this category reveal the investigation's focus, scope, direction, and strategy. Docket No. 57 at 7. The Plaintiff counters that this is circular logic, that the government must make a segregability showing for "every single document," and that, to hold otherwise is to conflate the categorical application of Exemption 7(A) with a segregability

analysis.

As an initial matter, the court disagrees with the Plaintiff's position that the government is required to create a document-by-document *Vaughn* index for purposes of segregability in an Exemption 7(A) case. *See Vaughn v. Rosen*, 84 F.2d 820 (D.C. Cir. 1973). The Plaintiff cites cases for the proposition that, even if an agency uses the categorical approach to show that responsive documents fit within Exemption 7(A), that does not change the fact that the agency still must demonstrate that the reasonably segregable portions of the documents within that class of documents have been produced. *Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treasury*, No. C 07-2590 PJH, 2008 WL 4482855, at *14 (N.D. Cal. Sept. 30, 2008); *Gavin v. U.S. S.E.C.*, No. 04-4522 (PAM/JSM), 2005 WL 2739293, at *4, n.4 (D. Minn. Oct. 24, 2005). However, these cases do not support the Plaintiff's contention that, in an Exemption 7(A) case, an agency must create a *Vaughn* index to demonstrate its segregability analysis. In addition, several of the cases the Plaintiff cites for the proposition that the government must produce a *Vaughn* index for purposes of its segregability analysis are not even Exemption 7(A) cases. Docket No. 54 at 13–14, n.6. (citing *Ocasio v. U.S. Dep't of Justice*, 70 F. Supp. 3d 469, 483 (D.D.C. 2014) (Exemption 7(c)); *Hertz Schram PC v. F.B.I.*, No. 12-CV-14234, 2014 WL 764682, at *4 (E.D. Mich. Feb. 25, 2014) (Exemptions 5, 6, 7(C), 7(D), and 7(E)); *Ford Motor Co. v. U.S. Customs & Border Prot.*, No. CIV. 2:06-13346, 2008 WL 4899402, at *15 (E.D. Mich. Aug. 1, 2008) report and recommendation adopted in part, rejected in part, No. 06-13346, 2008 WL 4899401 (E.D. Mich. Nov. 12, 2008) (Exemption 5). This is obviously an important distinction, because the government is uniquely excused from producing a *Vaughn* index for purposes of determining whether the agency has properly claimed a FOIA exemption in Exemption 7(A) cases. Indeed, the Eighth Circuit sitting

*en banc* issued a writ of mandamus vacating a district court's order directing the government to produce a *Vaughn* index in an Exemption 7(A) case based on the district court's apparent "belief that the Department was not asserting Exemption 7(A) in good faith or that it had not individually reviewed the requested documents to place them in their functional categories." *In re Dep't of Justice*, 999 F.2d 1302, 1310 (8th Cir. 1993).

Although an agency's use of the categorical approach to show that the withheld documents fit into FOIA Exemption 7(A) does not discharge its obligation to consider whether any portion of the records are reasonably segregable, an agency need not create a *Vaughn* index to account for the agency's determination that none of the responsive records are reasonably segregable. Requiring the government to provide a *Vaughn* index for purposes of its segregability analysis would eviscerate the policy considerations that have led courts to conclude that the government need not provide such an index to show that its withholding of responsive FOIA documents is justified under Exemption 7(A). *See Curran v. Dep't of Justice*, 813 F.2d 473, 475 (1st Cir. 1987) (holding that, if the government were required to supply a *Vaughn* index "the harm which the exemption was crafted to prevent would be brought about in the course of obtaining the exemption's shelter").

The next question is whether, in a FOIA Exemption 7(A) case, it is permissible for the government to assert that an entire *category* of documents is exempt from disclosure and therefore not reasonably segregable. The Court concludes that in this case, given the manner in which the Plaintiff framed its FOIA request (all documents provided by Walmart to the SEC related to possible violations of the Federal Corrupt Practices Act) and given the nature of the exemption the government has persuaded the Court it has properly claimed (Exemption 7(A)), the SEC's assertion that all responsive documents in its first category are exempt from disclosure and not reasonably

17

able to be segregated satisfies FOIA's segregability requirements. The SEC's release of any document or portion of a document, in response to the Plaintiff's request in this case, clearly identifies the document as one that the SEC itself believes to be important to its investigation, which, as a result, reveals the SEC investigation's focus, scope, direction, and strategy. The SEC has satisfied its obligation to determine whether any portion of the responsive records are segregable. *See Curran v. Dep't of Justice*, 813 F.2d 473, 476 (1st Cir. 1987) (approving the DOJ's segregability efforts where "the agency [had] certified that there was 'no reasonably segregable portion of any of the withheld material' suitable for release, and that any attempt to describe the records in greater detail 'would lead to disclosure of the very information sought to be protected.'"); *Dillon v. Department of Justice*, 102 F. Supp. 3d 272, 298 (D.D.C. 2015) (approving the FBI's segregability efforts where the Plaintiff requested the FBI's entire file on an al Qaeda operative and the FBI's affidavit stated that segregability was not possible because certain records were exempt from disclosure in their entirety pursuant to Exemption 7(A)); *Kidder v. F.B.I.*, 517 F. Supp. 2d 17, 32 (D.D.C. 2007) (holding as follows in case in which the FBI's affidavit stated that the responsive documents were exempt in their entirety because of Exemption 7(A): "[D]efendant is obliged merely to establish that categories of documents, not individual documents, are exempt from disclosure. Defendant has satisfied its burden, and its failure to make a document-by-document segregability determination is of no moment."); *Gavin v. U.S. S.E.C.*, No. 04-4522 (PAM/JSM), 2005 WL 2739293, at *4 (D. Minn. Oct. 24, 2005) (holding the SEC had not "sustained its burden of reasonable segregability under the FOIA" where "there [was] no declaration or affidavit that even, at a minimum, attests that the entirety of the documents are exempt, or that the non-exempt portions

of the documents are inextricably intertwined with the exempt portions.").[4]

IV. **Conclusion**

For the foregoing reasons, the Court concludes that the SEC properly has withheld the records responsive to the Plaintiff's FOIA request, in their entirety, under Exemption 7(A). Accordingly, the Court will GRANT the SEC's motion for summary judgment.

An appropriate order is filed herewith.

                                                           TODD J. CAMPBELL
                                                           UNITED STATES DISTRICT JUDGE

---

[4]The Plaintiff argues that "the SEC knows that its failure to conduct a segregability analysis is improper," citing a 2009 report by the Office of Inspector General which found that the SEC had been overusing Exemption 7(A), failing to review the documents before claiming the exemption, and failing to conduct a segregability analysis. Docket No. 54 at 21. Clearly, this report does not prove that the SEC failed to comply with FOIA in this or any other particular case.